AO 91 (Rev. 11/11) Criminal Complaint

Sealed
Public and unofficial staff access to this instrument are prohibited by court order

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

United States Courts
Southern District of Texas
FILED
August 23, 2021
Nathan Ochsner, Clerk of Court

United States of America
v.
HASSAN ALI ALBORAGEEF
(YOB: 1968)

*Defendant(s)*

Case No. **4:21-MJ-1804**

**FILED UNDER SEAL**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of March 2020 in the county of Harris in the Southern District of Texas, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. Sec 554 | Smuggling firearms from the United States |

This criminal complaint is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

Benjamin L. Huff, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 08/23/2021

[signature]
*Judge's signature*

City and state: Houston, Texas

Hon. Peter Bray, U.S. Magistrate
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **CRIMINAL NO. 4:21-MJ-1804** |
| **v.** | § | |
| | § | **UNDER SEAL** |
| **HASSAN A. ALBORAGEEF** | § | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Benjamin L. Huff, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I am a Special Agent of the United States Federal Bureau of Investigation (FBI) and have been so employed since May 2016. I have successfully completed the FBI basic academy at Quantico and have worked on criminal cases as well as international terrorism cases. As part of my official duties, I have participated in investigations on individuals trafficking in firearms and have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, and physical and electronic surveillances.

2. This Affidavit is based upon my personal involvement in this investigation, my training and experience, and my review of relevant reports, evidence and information supplied to me by other law enforcement officers. It does not include each and every fact known to me about the investigation, but rather only those facts that I believe are sufficient to establish the requisite probable cause.

3. Based on my training and experience and the facts set forth in this Affidavit, I believe there is probable cause to believe **HASSAN ALI ALBORAGEEF**, hereinafter ALBORAGEEF, committed the following offenses against the United States: 18 U.S.C. § 554, smuggling certain firearms of less than .50 caliber from the United States.

## PROBABLE CAUSE: BACKGROUND

4. Title 18, United States Code, Section 554 (Outbound Smuggling), makes it a crime to fraudulently or knowingly export firearms and ammunition from the United States in any manner that is contrary to federal law or regulations. Accordingly, it is illegal for any person to fraudulently or knowingly export or send from the United States, or attempt to export or send from the United States, any type of merchandise, article, or object in a manner that is contrary to any law or regulation of the United States; or to receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing that such merchandise or article is intended for export in a manner that is contrary to any law or regulation of the United States. The maximum statutory punishment for a violation of Section 554 is up to ten years of imprisonment, a criminal fine up to $250,000, or both.

5. The Export Control Reform Act of 2018 (ECRA) provides for the control of the export, reexport, and in-country transfer of items, and specific activities of United States persons, wherever located, that implicate national security. To that end, ECRA grants the President the authority to control "(1) the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or by foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items. 50 U.S.C. § 4812(a). Pursuant to that authority, the U.S. Department of

Commerce reviews and controls the export of certain items, including commodities, software, and technology, from the United States to foreign countries through the Export Administration Regulations (EAR), 15 C.F.R. §§ 730-774. The EAR impose licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or lawfully reexported from one foreign destination to another, including non-automatic and semi-automatic firearms equal to .50 caliber or less. Consequently, it is illegal for any person to export from the United States any firearms that are controlled pursuant to the EAR without an export license or other written authority from U.S. Department of Commerce.

6. Any person who smuggles, or attempts to smuggle, firearms from the United States (whether by exporting or attempting to export firearms or by facilitating the transportation or concealment of firearms prior to export with the intent to export such firearms) after having acquired the firearms by illegal means with the intent to export; or facilitate the transport or concealment of the firearms with the intent to export the same, does so in a manner contrary to federal law and regulation. Likewise, any person who smuggles, or attempts to smuggle, any firearms from the United States knowing that the export of firearms from the United States is prohibited without an export license or written authorization from the U.S. Department of Commerce, and who knowingly and willfully exports, or attempts to export; or facilitates the transportation or concealment of such firearms prior to export with the intent to export the same, without an export license or written authorization, does so in a manner contrary to federal law and regulation.

7. ALBORAGEEF was born in Iraq in 1968, initially entered the United States as a refugee in 1994, and became a naturalized U.S. citizen in 2002. According to Customs and Border Protection (CBP) interviews, ALBORAGEEF separated from his wife in Houston, Texas in or

around 2017 and subsequently moved from Texas to Baghdad, Iraq. Prior to October 2020, ALBORAGEEF resided and operated a business in Baghdad, but regularly spent time in Houston, Texas. In October 2020, ALBORAGEEEF made entry into the United States and has resided in Houston since that time. ALBORAGEEF told CBP he purchased vehicles from the U.S. from different dealerships and exported them to Iraq. ALBORAGEEF fixed the vehicles up in Iraq and sold them to customers there.

8. An identified individual, hereafter known as PERSON 1,[1] reported to the United States Government that a dual Iraqi/U.S. citizen, later identified as ALBORAGEEF, was involved with smuggling hundreds of weapons from Houston, Texas to Iraq. According to PERSON 1, ALBORAGEEF and his associates would procure handguns from the Houston, Texas area and conceal them inside of automobile engines, place them inside shipping containers, and export the firearms to Iraq. The smuggled handguns were concealed inside the piston cylinders and the crankshaft area of the engine blocks, and in order to prevent the handguns from rattling around during shipment, empty spaces within the piston cylinders and the crankshaft were filled with foam.

9. On or about March 5, 2020, FBI surveillance observed ALBORAGEEF drive his vehicle to a warehouse located on Corporate Drive in Sugar Land, Texas (WAREHOUSE). An unidentified male assisted ALBORAGEEF in climbing up into a bay door at WAREHOUSE where a gray shipping container, MRKU2653477, was located with open doors. Approximately 22 minutes later, ALBORAGEEF departed WAREHOUSE and arrived at an auto business in Houston, Texas (AUTO BUSINESS). Approximately 40 minutes later, ALBORAGEEF departed AUTO BUSINESS in tandem with a white Dodge Ram pickup truck registered to AUTO

[1] Subsequent information indicates that PERSON 1 may have been involved with smuggling and may have been a co-conspirator of ALBORAGEEF.

BUSINESS. The Dodge Ram carried a large crate in the cargo bed. The two vehicles arrived together at WAREHOUSE on Corporate Drive where the gray container was still in the open bay door. A forklift was brought out to remove the crate from the back of the Dodge Ram. The crate was then loaded in the container marked MRKU2653477. Several people, including ALBORAGEEF were observed carrying many items into the container, and the forklift made multiple trips in the container with pallets of boxes. A trucking cab arrived at WAREHOUSE, hooked up the container to the truck, and departed. ALBORAGEEF departed the United States for Iraq later that day and did not initially book a return flight. After FBI surveillance observed ALBORAGEEF at an AUTO BUSINESS in the Houston, Texas area on or about March 5, 2020. CBP identified shipping container MSKU1701295 was soon to be exported to Iraq and AUTO BUSINESS was listed as the exporter on the shipping paperwork. On or about March 13, 2020, CBP searched shipping container MSKU1701295 and discovered the container was filled with miscellaneous car parts. However, one crate inside the shipping container contained approximately 397 handguns which were concealed in the auto parts. These firearms ("Firearms") were less than .50 caliber and subject to the regulations cited above. Shipping documents related to this container indicated it was being exported to Iraq. The invoice related to the shipment was in the letterhead of WAREHOUSE. This invoice was billed to AUTO BUSINESS.

10. On or about March 16, 2020, CBP searched container MRKU2653477, which surveillance observed ALBORAGEEF help load on or about March 5, 2020. CBP discovered approximately 78 handguns, which constituted part of the Firearms that are the subject of this investigation, hidden amongst auto parts inside a brown crate. In addition to this particular crate, there were numerous other crates inside the container that just contained various auto parts. Additionally, surveillance photographs from on or about March 5, 2020 showed that the specific

crate, containing the Firearms and found inside the container, was the exact same crate that ALBORAGEEF personally escorted from AUTO BUSINESS to WAREHOUSE on March 5, 2020, several hours before he flew to Iraq. The shipping documents related to this container revealed the container was to be exported to Iraq. The invoice related to this shipment was on the letterhead of WAREHOUSE and was in part billed to a personal email address used by ALBORAGEEF.

11. CBP officers who searched containers MSKU1701295 and MRKU2653477 believed that these containers appeared to have been loaded by the same people and/or company. CBP noted that all of the auto parts in these containers were purchased from the same company, WAREHOUSE. All of the containers were loaded in the same manner using similar-type large boxes. The same type of rope was used to secure the boxes at the front of the containers. Additionally, many of the Firearms found in containers MSKU1701295 and MRKU2653477 were wrapped in the same type of cellophane. Both of these containers contained the Firearms which included numerous handguns but no long guns or rifles. Both containers included numerous magazines but no ammunition. The shipping containers also included numerous boxes inside which had the name "Hassan" or "Hussan" either written by hand or on stickers that listed the name "Hassan" or "Hussan" with a bar code. Based on my training and experience, I believe these names referred to Hassan Ali ALBORAGEEF and indicated the contents of the containers belonged to or were associated with him.

12. After the approximately 475 handguns that constituted the Firearms that are the subject of this investigation were discovered concealed inside the two shipping containers as mentioned above, CBP removed the Firearms and the shipping containers were reshipped to their indicated destination in Iraq. Containers MRKU2653477 and MSKU1701295 were shipped from

Houston, Texas, transited through Dubai, UAE, and arrived at the port in Umm Qasr near Basra, Iraq, on or about May 24 and May 27, 2020 respectively. According to the Maersk shipment tracking website, both containers remained at the port in Umm Qasr and did not leave the port until on or about June 5 and June 8, 2020, respectively.

13. On or about October 12, 2020, ALBORAGEEF arrived in Houston, Texas after departing Iraq via airplane. The FBI interviewed ALBORAGEEF and read him his Miranda rights which ALBORAGEEF waived. During the interview, which was recorded, ALBORAGEEF confessed to attempting to smuggle the approximate 475 Firearms mentioned above which were seized in March 2020.

14. The Firearms discovered in the shipping containers are of a type that are export controlled by the U.S. Department of Commerce under the Commerce Control List (CCL) pursuant to the EAR. On or about July 30, 2020, the U.S. Department of Commerce, Bureau of Industry and Security, reported that it conducted a licensing history check on ALBORAGEEF to determine if he had an export license and subsequently certified that no license history was found.

**CONCLUSION**

15. Based on the above stated facts, I believe there is probable cause to show ALBORAGEEF committed the following offenses against the United States: 18 U.S.C. § 554, smuggling firearms from the United States.

Respectfully submitted,

Benjamin Huff, Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on August 23, 2021, and I find probable cause.

Hon. Peter Bray
United States Magistrate Judge