**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **NO. 20-CR-584-S1** |
| | § | |
| **RAMI ALI MATTAR,** | § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Nicholas J. Ganjei, United States Attorney, and Steven Schammel and Heather Winter, Assistant United States Attorneys, and Emma Ellenrieder, Department of Justice, National Security Division, and the defendant, Rami Ali Mattar ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the Superseding Indictment. Count One charges Defendant with violations of the Export Control Reform Act, in violation of 50 U.S.C. §§ 4819(a)(1), 4819(a)(2)(A), (B), (C), (D), (E), (F), and (G), and 4819(b) and 15 C.F.R. § 736.2(b)(1). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment, either as charged in the Superseding Indictment or proved to a jury, proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of 50 U.S.C. §§ 4819(a)(1), 4819(a)(2)(A), (B), (C), (D), (E), (F), and (G), and 4819(b) and 15 C.F.R. § 736.2(b)(1) is imprisonment of not more than 20 years and a fine of not more than $1,000,000. Additionally, Defendant may receive a term of supervised release of up to 3 years. *See* Title 18, United States

Code, Sections 3559(a)(3)) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than 2 years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(e)(3). Defendant understands that the sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

**Mandatory Special Assessment**

3. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Immigration Consequences**

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea

2

of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

<b>Cooperation</b>

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States ~R.M.~ Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully ~xw/ NYL~ cooperate with the United States, ~If the Defendant chooses to do so,~ and not oppose the forfeiture of assets. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to firearms and money violations being committed in the United States or overseas. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard, if the Defendant elects to cooperate:

(a)　　Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b)　　Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

3

(c)     Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)     Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by Defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)     Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f)     Should the recommended departure, if any, not meet Defendant's expectations, Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

### Waiver of Appeal and Collateral Review

7. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. Defendant also agrees that should the conviction following Defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any

4

counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against Defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

9. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

11. The United States agrees to each of the following:

(a)    If Defendant pleads guilty to Count One of the Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this plea

agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing. Defendant agrees that with respect to any and all dismissed charges he is not a 'prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law; and

(b)     If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## Agreement Binding - Southern District of Texas Only

12. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Superseding Indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

13. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

6

(d)     to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

14. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

15. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a)     If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

7

(b)     At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)     At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

<b>Factual Basis for Guilty Plea</b>

16. Defendant is pleading guilty because he is in fact guilty of the charge contained in Count One of the Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others, would be offered to establish Defendant's guilt:

The FBI began investigating Rami Ali MATTAR (MATTAR) based on a report the FBI received in January 2020 from the owner/operator of a local federally licensed firearms dealer (FFL). On February 1, 2020, the FBI conducted physical surveillance of MATTAR and observed MATTAR arrive at a gun show being held at the Pasadena Convention Center. MATTAR was observed purchasing approximately 18 firearms from various private, unlicensed sellers with cash. Afterwards, MATTAR placed the guns into his vehicle and returned to residence, located at 3511 Brinton Trails Lane, Katy, Texas. MATTAR then unloaded the firearms from his vehicle and into his garage. On February 2, 2020, undercover officers reported to the FBI that they observed MATTAR return to the gun show on February 2, 2020 to purchase at least eight more firearms from private sellers.

On or about February 9, 2020, MATTAR drove to another gun show at the Pasadena Convention Center. MATTAR entered the gun show carrying a camouflage duffel bag and

8

purchased multiple firearms. MATTAR engaged in a conversation at the gun show with an FBI Agent who was acting in an undercover capacity. MATTAR introduced the Agent to several dealers and showed the Agent multiple firearms that would be a good deal. When asked why MATTAR did not purchase the guns himself since it was a good deal, MATTAR replied that it was not on his list. The Agent asked MATTAR if he was a collector and MATTAR replied that he was, but the guns have a good resale value if you hold on to them for a while. MATTAR loaded his purchased firearms into his vehicle and drove to his residence where he unloaded the firearms into his home.

On February 15, 2020, FBI surveillance observed MATTAR drive to the gun show held at the Lone Star Convention and Expo Center in Conroe, Texas, where he purchased firearms from private sellers for cash. After leaving the gun show, MATTAR drove his vehicle containing the firearms back to his residence where he and his wife were observed unloading the firearms from the vehicle into the home. MATTAR engaged in this activity over the course of two months, as observed by FBI. The entirety of the surveillance the FBI conducted on the above-described transactions revealed MATTAR only purchased firearms from private, unlicensed sellers using cash.

Phone records for MATTAR's cellular phone account led to the identification of a storage company where MATTAR rented a unit, hereafter known as STORAGE. On June 16, 2020, the STORAGE manager confirmed that MATTAR had rented a unit and stated MATTAR was very specific with the type of unit he wanted: a unit with direct access without many turns to get to the unit. MATTAR wanted to walk right through the door to his unit. The manager observed MATTAR carrying several heavy bags into the storage unit. The manager gave a description of this bag that was consistent with the bag agents observed MATTAR use in order to store gun

9

purchases from his visits to the gun shows mentioned above.

The STORAGE manager later reported that on June 23, 2020, MATTAR switched storage units from a 5x5 foot unit to a 10x30 foot unit. MATTAR told the manager he was going to store a car or a boat. MATTAR specifically told the manager he did not want a unit near a surveillance camera. According to the manager, a few days later, MATTAR and his wife drove an older red Chevrolet Equinox, (hereafter EQUINOX) to his storage unit. The manager reported on one occasion she walked by the unit while MATTAR and his unidentified associate were working inside the unit and observed a blue floor jack inside the unit with the unidentified associate lying on his back underneath the vehicle working on it.

The store manager reported that on July 11, 2020, MATTAR asked the manager if MATTAR could have the EQUINOX towed as it did not run. On July 21, 2020 at approximately 11:30 a.m., FBI surveillance observed MATTAR speaking with the wrecker service who was attempting to tow the EQUINOX. The wrecker picked up the EQUINOX and drove it to an auto body shop in Houston, Texas and dropped it off inside the lot. On July 22, 2020, at approximately 8:20 p.m., FBI surveillance identified the EQUINOX was loaded onto a car hauler, which then departed the auto body shop. At approximately 10:50 p.m., the car hauler was observed departing Houston eastbound on Interstate I-10.

On or about July 23, 2020, HPD located the EQUINOX on the back of the car hauler on the East Freeway near the Harris County line. HPD observed the car hauler had an obstructed rear license plate. A traffic stop was conducted, and after further inspection, HPD discovered 38 handguns were concealed inside the gas tank of the red EQUINOX and wrapped in plastic which were held in place inside the gas tank by spray foam which filled the tank. HPD seized the EQUINOX and utilized a contract towing service to transport the seized EQUINOX to the vehicle

10

impound lot.

HPD personnel determined that the EQUINOX was being delivered to an identified individual in a state outside of Texas.  On or about July 24, 2020, HPD received a telephone call from this individual who stated he worked for a shipping and storage yard outside of Texas.  The identified individual also told HPD the business that contracted this shipment was located in Iraq. The individual explained his company did a lot of business with this Iraqi company, usually picking up vehicles purchased at auctions around the country, which are then transported to their storage yard in a state outside of Texas, and then shipped either partially disassembled or whole.

On July 23, 2020, FBI surveillance observed MATTAR visit a pawn shop located in Houston, Texas wanting to sell approximately 128 gun cases to the pawn shop which the manager agreed to purchase for $1 per case. The majority of the cases were original hard cases for handguns and had serial number/bar code tags still on the cases. After comparing the serial numbers on these cases to the serial numbers of the 38 guns which were seized from the EQUINOX on July 23, 2020, the FBI confirmed six of the firearms were an exact match by serial number, make, and model.

On October 25, 2020, BIS determined the firearms seized from the EQUINOX on July 23, 2020, were classified under Export Control Classification Number 0A501.a and were thus controlled on the Commerce Control List. These firearms subsequently required a BIS license for the export or re-export to Iraq.  On August 20, 2021, the United States Department of Commerce, Bureau of Industry and Security (BIS), Office of Exporter Services, Export Management and Compliance Division reported that they conducted a licensing history check on MATTAR to determine if he had an export license and certified that no license history was found. MATTAR knew such license or approval was required for the export of these firearms and intended to violate

11

the law by exporting them without such license or approval.

On July 12, 2021, FBI agents executed a search warrant at MATTAR's residence, located at 3511 Brinton Trails Lane, Katy, Texas 77494. The FBI seized approximately 104 firearms and $38,510 in cash from the residence. The FBI also interviewed MATTAR and read him his Miranda rights which MATTAR waived. During the interview, which was recorded, MATTAR confessed to buying guns for others to send to Iraq.

## Breach of Plea Agreement

17. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

## Monetary Penalties, Assets and Financial Disclosures

18. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to Defendant may be applied to federal debts.

19. Defendant understands that restitution, forfeiture and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in

12

any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders and any fines.

## Forfeiture

20. As part of this plea agreement, Defendant agrees to the following:

(a) to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation;

1. $32,532 U.S. Currency;
2. $10,000 U.S. Currency;
3. $2,882 U.S. Currency;
4. $38,510 U.S. Currency; and
5. 802 assorted firearms and their associated magazines, parts, cases and ammunition

(b) to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property); and

(c) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

## Financial Statement

21. Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

22. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested

13

by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

## Complete Agreement

23. This written plea agreement, consisting of 17 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

[The space below was intentionally left blank.]

14

24. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _Houston_ , Texas, on _September 24_ , 2025.

_____
Rami Ali Mattar

Subscribed and sworn to before me on _September 24_ , 2025.

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Nicholas J. Ganjei
United States Attorney

By: _____
Heather Winter
Assistant United States Attorney
Southern District of Texas

_____
Ali Fazel
Attorney for Defendant

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 20-CR-584-S1 |
| | § | |
| RAMI ALI MATTAR, | § | |
| Defendant. | § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Superseding Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements, and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and that the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Ali Fazel
Attorney for Defendant

_____9-24-25_____
Date

16

I have consulted with my attorney and fully understand all my rights with respect to the Superseding Indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____
Rami Ali Mattar
Defendant

09/24/2025
_____
Date

17